IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
**jonhall93@icloud.com and
jonhall1993@hotmail.com**
THAT IS STORED AT PREMISES
CONTROLLED BY APPLE INC.

Case No. 1:22-mj-00212-JCN

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Taylor Bagley, a Task Force Officer (TFO) with Homeland Security Investigations
(HSI), being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for
information associated with a certain account that are stored at premises owned, maintained,
controlled, or operated by Apple Inc. ("Apple"), an electronic communications service and/or
remote computing service provider headquartered at One Apple Park Way, Cupertino,
California.  The information to be searched is described in the following paragraphs and in
Attachment A.  This affidavit is made in support of an application for a search warrant under 18
U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Apple to disclose to the
government copies of the information (including the content of communications) further
described in Section I of Attachment B.  Upon receipt of the information described in Section I
of Attachment B, government-authorized persons will review that information to locate the items
described in Section II of Attachment B.

2.      I have been employed as a Task Force Officer with the U.S. Department of Homeland Security, Homeland Security Investigations (HSI) since March 2022, and am currently assigned to the HSI Bangor, Maine office.

3.      I am a Detective of the Maine State Police and have been so employed since 2015. I am currently assigned to the Computer Crimes Unit (CCU) where I investigate a multitude of State and Federal crimes but primarily computer-related crimes or crimes involving digital evidence. Since 2007, I have worked in law enforcement during which I have attended several law enforcement-training courses both relative to criminal investigation in general and cyber-crime in particular. I have led numerous investigations involving child exploitation on the internet and/or use of digital media or computer systems in committing crimes.

4.      I receive training on a daily basis working computer investigations for the Maine State Police Computer Crimes Unit (CCU). My work with the CCU has allowed me to work with CCU forensic analysts and to learn from them some of the basics of how the forensic analyst examines digital evidence. In addition, I have interviewed numerous individuals who have possessed and/or disseminated sexually explicit material and have discussed with them the methods used to learn about, to obtain, to disseminate child pornography, and to avoid detection by the authorities.

5.      I have authored and assisted in the execution of more than 40 search-and-seizure warrants during my tenure as a law enforcement officer. I attended a one-day seminar on drafting effective search warrant affidavits sponsored by the Maine Office of the Attorney General. I also attended a four-hour seminar specifically on writing search warrants for digital evidence put on

by the Attorney General's Office. Annually, I receive 20 hours of in-service training for law enforcement officers, which includes Maine case law and various criminal law updates.

6.     I make this affidavit in support of an application for a search warrant for the Apple iCloud account of jonhall93@icloud.com and jonhall1993@hotmail.com that was found in the device of Evidence Item 2, Apple iPhone, which was found to be in possession of Jon Hall during his arrest on 08/29/2022.

7.     The purpose of this application is to seize evidence, more particularly described in Attachment B, of violations of 18 U.S.C. §§ 2252, 2251, 2422, and 2252A, which prohibit a person from knowingly producing, transporting, receiving, distributing, producing, enticing, soliciting, possessing or accessing with intent to view, in interstate or foreign commerce, or by using any facility or means of interstate or foreign commerce, child pornography, as defined in 18 U.S.C. Section 2256(8). 18 U.S.C. §§ 2252(b) and 2252A(b) also make it a crime to attempt to commit such acts regarding child pornography. In addition, 18 U.S.C. Section 2422(b) makes it a crime to use or attempt to use a facility of interstate commerce to entice or persuade a child to engage in any sexual activity for which any person can be charged with a criminal offense. This includes the production of child pornography under 18 U.S.C. 2251 (9).

8.     The facts set forth in this affidavit are based on my personal knowledge, information obtained during my participation in this investigation, information from others, including law enforcement officers, my review of documents and computer records related to this investigation, and information gained through my training and experience. Based on this training and experience, there is probable cause to believe that contraband and evidence, fruits, and instrumentalities of 18 U.S.C. §§ §§ 2252, 2251, 2422, and 2252A will be found in the

subject account. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

## JURISDICTION

9.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

10.      I am a Detective assigned to the Maine State Police Computer Crimes Unit. I am currently investigating the production, dissemination, possession and transportation of sexually explicit images of minors (child pornography), in violation of 18 U.S.C. §§ 2252, 2251, 2422, 2252A, via the use of several seized electronic devices as well as numerous online social media and storage accounts; which all are believed to belong to Jon Alan Hall, with a date of birth in 1993.

### NEWPORT TABLET INVESTIGATION

11.      On 06/17/2021, I met with Newport Police Officer Amanda Loeven at the Newport Police station. Officer Loeven was investigating a male suspect identified as Jon Hall, who at the time, resided at 9 Loop Road in Newport. Officer Loeven had learned that Hall was on the Maine Sex Offender Registry and was required to register in Newport but had not since moving to Newport from Lewiston.

4

12.    Officer Loeven explained she has investigated two recent incidents involving Jon Hall as a suspect in alleged sexual misconduct involving teenagers, 21N-01427 and 21N-01774.

13.    In 21N-01427, Hall had been accused of harassing local juveniles identified as "Victim B" (age 15) and "Victim A" (age 15).[1]  "Victim B" and "Victim A" reported that Hall would often grab their buttocks and solicit them for nude images of themselves in return for money.  Officer Loeven spoke with Jon Hall who denied the accusations but admitted that he currently resided at 9 Loop Road in Newport.

14.    In 21N-01774, Officer Loeven spoke with a male complainant identified as Hunter Giannelli.  The complainant came into the Newport Police station to make a complaint against Jon Hall regarding sexual abuse of children as well as possession of child pornography.  The complainant provided Officer Loeven the tablet later identified as Evidence Item 1 during this incident.  The complainant reported the tablet belonged to Hall and that the complainant had found sexually explicit material of children on the tablet.  Officer Loeven requested assistance in investigating Hall's tablet.  I took custody of Hall's tablet from Officer Loeven and submitted the tablet into State Police evidence at the Computer Crimes Unit located in Vassalboro.  The tablet was titled as Evidence Item #1.

15.    On 07/02/2021, I researched Hall's criminal history and found that he had been convicted for Possession of Sexually Explicit Material of Minors under the age of 12 years old in

---

[1] The victim's were named in the report and I know the names.  In order to protect their identity "A" and "B" will be used in this affidavit.

April of 2015.  Hall also had convictions for Unlawful Sexual Contact in 2011 and Unlawful
Sexual Touching in 2010.

16.     On 07/06/2021, I presented a search warrant for Evidence Item #1, Hall's tablet,
to Justice Ann Murray at the Penobscot Judicial Center.  Justice Murray reviewed and signed the
warrant, authorizing the search of evidence item #1.

17.     Computer Forensic Analyst (CFA) Victoria Brennan was assigned to forensically
examine the tablet.  CFA Brennan found several images and videos of sexually explicit material
of a young male child approximately 12 to 14 years in age.

18.     In examining evidence item # 1, CFA Brennan discovered that the tablet had sent
email using the addresses of jonhall717@gmail.com and shall6473@gmail.com.  CFA Brennan
found evidence that the application Snapchat had been downloaded from the Google Play Store
and installed on the device on 6/3/2021.   CFA Brennan found evidence that the email addresses
jonhall717@gmail.com and fordfan111793@gmail.com were associated with signing into the
Google Play Store application on the same date that Snapchat was downloaded onto evidence
item number one.

19.     On 03/04/2022, Nokomis High School Assistant Principal sent Newport Police
Officer Amanda Loeven school yearbook pictures of two students known to commonly associate
with Jon Hall; students "Victim A" and "Victim B", as identified earlier in this affidavit.  In
viewing the picture of "Victim A", I found that he resembled that of the male child depicted in
the images and videos found on Evidence Item #1.

20.    On 03/28/2022, I met with "Adoptive Parents A", the legal adoptive parents of "Victim A". "Adoptive Parents A" explained how they had adopted "Victim A" in 2019. They stated that "Victim A" had been sexually abused earlier in his life by his biological father.

21.    "Adoptive Parents A" stated that they believed "Victim A" was possibly homosexual and that they grew concerned when "Victim A" started hanging out with an older male whom they identified as Jon Hall. Hall would give "Victim A" money, a cellphone, tobacco vapes and other gifts. "Adoptive Parents A" later heard that Hall was homosexual and believed he was being too friendly with "Victim A". "Adoptive Parents A" told Jon Hall to not come back to their house and to stop hanging out with "Victim A".

22.    I showed "Adoptive Parents A" a portion of picture files found on Evidence Item #1 of the male child masturbating on a bed believed to be "Victim A". The pictures I showed had been cropped to avoid showing any graphic portion of the image, all that could be seen was the Victim's face and a portion of the bedroom he was in. "Adoptive Mother A" viewed the image and stated the male child resembled "Victim A".

23.    On 04/08/2022, I met with Victim A. I showed Victim A a portion of the video file of sexually explicit material found on evidence item 1. Victim A stated that the boy in the video was him, that he took the video himself and that he was 12 years old at the time he produced the video. Victim A stated that it is possible that he sent the video of himself to Jon Hall but he does not remember. Victim A stated that if he had sent the video to Hall it would have been because he would have likely been offered something in return from Hall.

7

24.     Victim A stated Hall made numerous sexual advances on him in the past; touching his inner thigh and requesting Victim A send him nude images of himself. Victim A stated that Hall would buy Victim A and his friends gifts such as alcohol, vapes and other items as a means of getting them to send Hall nude images of themselves.

## SNAPCHAT AND INSTAGRAM CYBERTIP INVESTIGATIONS

25.     The Maine State Police Computer Crimes Unit received three separate CyberTips between 07/13/2021 and 09/23/2021 from the National Center for Missing and Exploited Children (NCMEC). CyberTipline Report Numbers 91796927 and 96574514 were reported by Electronic Service Provider (ESP) Snapchat, while CyberTipline Report Number 99290888 was reported by ESP Instagram. Both Snapchat and Instagram CyberTips were reported to NCMEC in accordance with federal law, 18 U.S.C.A. § 2258A.

26.     Snapchat is a multimedia messaging app developed by Snap Inc., originally Snapchat Inc. One of the principal features of Snapchat is that pictures and messages are usually only available for a short time before they become inaccessible to their recipients.

27.     Instagram is a free photo and video sharing app available on iPhone and Android. People can upload photos or videos and share them with their followers or with a select group of friends. They can also view, comment and like posts shared by their friends on Instagram. Anyone 13 and older can create an account by registering an email address and selecting a username. Instagram is owned and operated by Facebook. Facebook and Instagram accounts can be linked together into one account, which shares a username. (reference www.instagram.com as accessed on 03/25/2022)

8

28.     NCMEC is a nonprofit organization that provides services to families and professionals that relate to the abduction and sexual exploitation of children. NCMEC also operates the CyberTipline and the Child Victim Identification Programs to assist law enforcement officers and others in identifying and rescuing victims of child exploitation and child pornography.  As part of the NCMEC directives, the NCMEC works with electronic service providers (ESP) and remote computing service providers, such as Facebook, to reduce the dissemination of child pornography images and or videos on the internet.  When an ESP becomes aware of suspected child pornography images and/or videos, the ESP representative may view the images and/or videos in question to determine if the images and/or videos is child pornography and thus a violation of the ESP use agreement with the user(s).   If the image and or video is deemed by the ESP representative to be child pornography, the ESP will file an electronic report with the NCMEC.  The reporting ESP will provide in the NCMEC report samples of the child pornography images and/or videos, IP addresses[2] captured at the date and time of the child pornography file being uploaded by the user, and any registration information (if available).  NCMEC will then research more publicly available information based on the information provided to them by the ESP to determine, if possible, the identification and or geographic location of the user uploading the child pornography images and or videos in order to forward the report to the appropriate jurisdiction.  NCMEC will then forward their report to the

---

[2] *Internet Protocol Number* (IP) An IP is a unique numerical label assigned to each device (e.g., computer, printer) participating in a computer network that uses the Internet Protocol for communication.  IP addresses are usually written and displayed in human-readable notations, such as 172.16.254.1 (IPv4), and 2001:db8:0:1234:0:567:8:1 (IPv6).  Every machine that is on the Internet has an IP number.  Every location has a unique IP number.

Regional Internet Crimes Against Children (ICAC) commander for further investigation. The Maine Computer Crimes Unit is the regional ICAC for Maine.

29.     On 05/12/2021, NCMEC received CyberTip report #90092957 from Snapchat, as required by 18 U.S.C.A. § 2258A. In this case Snapchat captured a user uploading one video file of sexually explicit material. Snapchat reviewed the uploaded file. Snapchat reported the username on the suspect account was "jonhall93". Snapchat reported an email address of fordfan111793@gmail.com and a phone number of (207)-447-5240 as being listed as the verification contact information for the user of the account.

30.     In CyberTip 90092957 the user uploaded a video file titled as *"jonhall93-None-3a036137-6ac1-506f-991f-2ee8c4f972b0~36-5b3f2c25af.mp4"* on the date of 05/08/2021 at 22:06:46 Hours UTC.

31.     Snapchat did not provide an IP Address used during the upload of the contraband video file but did provide an IP Address used to log into the suspect account six days prior to the upload of the video. The IP address of 172.100.85.95 was used on 05/02/2021 at 22:06:46 Hours UTC to log into the suspect account. The IP address was used by Charter Communications, also known as Spectrum. A subpoena was issued to Charter Communications for subscriber information for the subscriber assigned to the IP address of 172.100.85.95 on 05/02/2021 at 22:06:46 Hours UTC. On 06/14/2021 Charter Communications identified the subscriber as Luke Park, with a residence of 528 Cross Hill Road, Augusta, Maine.

32.     I viewed the video file titled as *"jonhall93-None-3a036137-6ac1-506f-991f-2ee8c4f972b0~36-5b3f2c25af.mp4"*. The video file is of an adult male having anal sexual

intercourse with a male child. Both the adult and child are completely naked. Room settings

such as bed sheets and pillow are shown in the video. The video appears to have been made by a

camera held by the adult male pointing down towards the child to capture the sexual act. The

adult male has the child's arms restrained behind the child's back while a pillow is covering the

child's head as he lay face down on the bed. I estimate the age of the male child to be 10 to 12

years of age based on lack of body hair, muscle growth and overall body growth, development

and size in comparison to the adult male shown in the video.

  33. On 05/31/2021, NCMEC received CyberTip report #91796927 from Snapchat, as

required by 18 U.S.C.A. § 2258A. In this case, Snapchat captured a user uploading 2 files of

sexually explicit material. Snapchat reviewed the uploaded files. Snapchat reported the

username on the suspect account was "jon_e5143". Snapchat reported that the suspect account

had a phone number of (207)-213-3037, and a listed date of birth of 11-22-1993.

  34. Snapchat reported that their staff had viewed the entire contents of both video

files provided in CyberTip 91796927. I viewed both videos and confirmed both were sexually

explicit material of minors consisting of file names:

  a. "jon_e5143-None-28cda07d-fdab-5067-b4f4-f624e7c525ee~39-

   25581b6598.mp4"

    i. I viewed video file "jon_e5143-None-28cda07d-fdab-5067-b4f4-

     f624e7c525ee~39- 25581b6598.mp4". The video file depicted two male

     children, approximately 10-12 years in age, exposing their genitals and

     performing oral sex on each other. I estimate the age of the boys based on

overall body structure and size as well as lack of pubic hair growth and development.

b. "jon_e5143-None-28cda07d-fdab-5067-b4f4-f624e7c525ee~39-74e99ed7cf.mp4".

   i. I viewed video file "jon_e5143-None-28cda07d-fdab-5067-b4f4-f624e7c525ee~39- 74e99ed7cf.mp4". The video file depicted a male child, naked on a bed, while an adult male engages in anal sexual intercourse with the child. I estimate the age of the male child as being 10-12 years in age due to overall size and development of the body and genitals, as well as lack of pubic hair growth. The size of the child in comparison to the adult male is also relevant to the estimation of age of the child.

35.    On 06/02/2022 I presented Google, Snapchat and Instagram search warrants related to this investigation, consisting of the much of the same affidavit, to Justice Roberts at the Penobscot Judicial Center. Justice Roberts reviewed the search warrants and images described in paragraph 34 and signed all three account search warrants.

36.    On 09/23/2021, Planning and Research Associate (PRA) Jared Pingree began an investigation into CyberTip # 91796927, learned, and relayed that Snapchat account username "jon_e5143", with phone number (207)-213-3037 and a listed date of birth of 11-22-1993; had uploaded the two video files of a child being sexually exploited, described in paragraph 34, on

the date of 05/27/2021.  Snapchat reported that the two video files were uploaded by the suspect account on 05/27/2021 at 12:01:43 Hours UTC and 12:01:31 Hours UTC.

37.     Snapchat did not provide an IP address for the upload of the video files but did provide an IP address for a login to the suspect account occurring on 05/13/2021 at 21:48:44 Hours UTC from an IP address of 2600:387:c:2c12::142, two weeks prior to the upload of the video files.  Upon researching the IP address of 2600:387:c:2c12::142 I learned that it was a cellular IP address belonging to AT&T Wireless.  I contacted AT&T who advised they do not retain any subscriber information in relation to cellular IP addresses.

38.     Snapchat did however provide a phone number for the suspect account which was (207)-213-3037.  PRA Pingree researched the phone number through an open-source phone number locator called ZetX.  ZetX is a free phone lookup provided to law enforcement.  The search provided the phone carrier as US Cellular.  On 09/27/2021 Assistant Attorney General Paul Rucha issued a subpoena to US Cellular for the subscriber records of the cellular phone account of (207)-213-3037.

39.     On 10/13/2021, US Cellular responded to the subpoena identifying the phone number of (207)-213-3037 as belonging to the account of Chandler Wierczorek of 38 Tempesta Way Norridgewock, Maine.  Also on the phone account was an Austin Simmons and Heather Wierczorek.  Three other phone numbers were listed on the account including (207)-446-5108, (207)-557-1839 and (828)-220-1156, though only three persons names were provided.  A second address was listed on the account of 84 Kinderhook Street Randolph, Maine.  [As explained below, Chandler Wierczorek was a roommate of Hall in Norridgewock.]

40.     PRA Pingree researched the address of 38 Tempesta Way Norridegwock, Maine using TLOxp, which is a commercially available, subscription-based database service offering access to law enforcement officers in the course of performing their duties.  PRA Pingree found several persons listed as residing at 38 Tempesta Way in Norridgewock which included:

41.     Jon A. Hall, date of birth of 11/17/1993.  The name Jon Hall was similar to that of the suspect Snapchat account username of "jon_e5143", whose listed date of birth on the account was 11/22/1993; same first name, month and year.  Hall had a current address of 103 Hickory Hills Drive Morganton, NC, and several former addresses including 38 Tempesta Way Norridgewock, ME.  Hall had numerous phone numbers associated with him including (910) 391-8077.

42.     PRA Pingree researched the Maine Sex Offender Registry and found that Jon Alan Hall, date of birth 11/17/1993 was a lifetime registrant for convictions of Possession of Sexually Explicit Material of a Minor under 12 years old.

43.     PRA Pingree researched the Spillman database; a record keeping system used by Maine law enforcement.  A name file for Jon Hall, date of birth 11/17/1993, listed Hall as residing at various residences in Chelsea, West Gardiner and at 9 Loop Road in Newport, consistent to Newport Police investigations.  Penobscot County Spillman, used by local municipalities and Sherriff Office departments had numerous involvements in 2021 with Hall listed as residing at 9 Loop Road in Newport.

44.     As I searched through the Spillman database I observed Hall had numerous involvements in Penobscot, Sagadahoc, Kennebec and Somerset counties.  These involvements

14

primarily included Hall having inappropriate and sexually focused contact with young boys

within the age range of 12 to 14 years old.  Numerous police reports documented Hall

associating with young boys, sexually abusing young boys and soliciting young boys for sexual

acts and sexually explicit materials.  These reports ranged in time from 2019 through 2021.

    45.    State Police Spillman listed several investigations against Hall of a sexual

manner.

    c.  Incident <u>06Y004319</u> (2006), documents allegations made against Hall when he

      was 12-years old, forcing a 5-year-old boy to perform oral sex on Hall

    d.  Incident <u>14U332</u> (2014), Maine State Police Computer Crimes Unit investigated

      and charged Hall with Possession and Dissemination of Sexually Explicit

      Material of a Minor (under 12 years of age).  The investigation revealed numerous

      past juvenile convictions for Unlawful Sexual Contact and Unlawful Sexual

      Touching.

    e.  Incident <u>20S054370</u> (2020), Maine State Police Major Crimes Unit investigated

      Hall for soliciting several boys for oral sex in exchange for money as well as

      sexually molesting them.

    f.  Incident <u>21S001241</u> (2021), Maine State Police Major Crimes Unit investigated

      Hall for sexually molesting a 15-year-old boy.  In this investigation Det. Moore of

      the Major Crimes Unit learned that Hall had been contacting the victim through a

      Facebook account with a username of "Jon Evans", consistent to that of the

      Instagram CyberTip 99290888.  In an interview with Hall reference this MCU

investigation, separate from his involvement with Facebook, Hall admits to Detective Moore that Snapchat had banned his Snapchat account, showing a connection and suspension to Snapchat is consistent with Snapchat reporting two accounts suspected of belonging to Hall as reported in CyberTips 91796927 and 96574514.

46.     In the second Snapchat CyberTip report, on 07/27/2021, NCMEC received CyberTip report #96574514 from Snapchat, as required by 18 U.S.C.A. § 2258A. In this case, Snapchat captured a user as uploading 3 files of sexually explicit material. ESP Snapchat reviewed all uploaded files.  Snapchat reported the username on the suspect account was "jon_david330".  Snapchat reported that the suspect account had a phone number of (828)-659-4295, and a listed date of birth of 07/24/85.

47.     In CyberTip 96574514, Snapchat identified 3 videos of sexually explicit materials of a minor which were uploaded by the suspect account on 07/26/2021 at 21:44:41 Hours UTC. Snapchat staff reviewed the contents of all three videos prior to reporting to NCMEC.  I viewed all three videos and confirmed they were sexually explicit material of a minor.

48.     On 08/28/2021, NCMEC received CyberTip report #99290888 from Instagram, as required by 18 U.S.C.A. § 2258A. In this case, Instagram captured a user as uploading 1 file of sexually explicit material and one image Instagram identified as the profile picture of the suspect account. ESP Instagram did not review the content of the file.  Instagram reported that the account used the screen name "Jon Evans", the email address of fordfan111793@gmail.com , a username of "jon.hall.1993" and a phone number of (207)-213-3037.  The email address of fordfan111793@gmail.com is consistent with the email address found on Evidence Item #1.

16

49.     Instagram reported that user "Jon Evans" had uploaded and disseminated the reported sexually explicit material to an Instagram user identified as username "Ian_dview" on 07/01/2021 at 04:35:13 Hours UTC.

50.     Instagram reported that their staff had not viewed the one reported video file but found that it had a hash match of a previously confirmed video file of sexually explicit material of a minor.  Instagram categorized the video file as A1, which is categorization of a prepubescent minor engaged in a sexual act.

51.     On 02/15/2022 I presented a search warrant to Justice Stokes at the Kennebec Judicial Center to view the video file and profile picture provided in CyberTip 99290888. Justice Stokes reviewed and signed the warrant authorizing me to view the video file.  I viewed the video file provided in CyberTip 99290888 and titled as "Pp4dBCi66rLFhuve211199298_244745450433107_568270821990973733_n.mp4" and confirmed it was sexually explicit material of a minor.  I also viewed the profile picture and found that it was that of a cemetery, with no identifiable feature.

52.     On 01/10/2022, I contacted the Maine Sex Offender Registry representative Kathy Holt.  Holt researched Jon Hall in the sex offender registry database and advised that Hall had left Maine and moved to North Carolina, where he registered with the North Carolina Sex Offender Registry on 12/07/2021 and sent notice to Maine Sex Offender registry on 12/13/2021. Hall had registered his address with the North Carolina Sex Offender Registry as 103 Hickory Hills Drive, Morganton, North Carolina 28655.  Hall provided a phone number of 910-391-8077 as his personal phone number on his North Carolina sex offender registration.  In running Hall's information through Spillman I found that the North Carolina Sex Offender Registry had an

email address for Hall on his Sex Offender Registry name file of fordfan111793@gmail.com, consistent to that provided in Instagram CyberTip 99290888, Evidence Item #1 and that of Hall's TLOxp name file.

North Carolina Sex Offender Registry:

53.     On 05/06/2022 I spoke with Lt. Shelly Hartley of the Caldwell County Sheriff's Office in North Carolina. Lt. Hartley advised that she had received an informational tip from the United States Marshall Service, Marshall Joe Cowan, concerning a sex offender residing in Caldwell County and not registering as a sex offender. Marshall Cowan reported having received information from the Maine State Police Computer Crimes Unit concerning suspect Jon Hall, who was the main suspect in NCMEC CyberTip 96574514. Marshall Cowan found Hall's employer at Porta Jon Service who confirmed Hall's employment. Marshall Cowan did not make contact with Hall and thus reported Hall's failure to register to the local sex offender registry which is the Caldwell County Sheriff's Office, which Lt. Hartley supervises.

54.     Lt. Hartley investigated Hall's Failure to Register and ultimately obtained an arrest warrant for Hall for Failure to Register as a Sex Offender. On 12/06/2021, Jon Hall was arrested by the McDowell County Sheriff's Office, as reported in McDowell Sheriff's Incident Report 2021-03482. The following day, 12/07/2021, Hall registered as a sex offender with the Caldwell County Sheriff's Office, listing 309 Abernathy Street NW Apartment # 1, Lenoir, North Carolina 28645. Upon registering with Lt. Hartley, Hall reported to her that he had friends in Burke County; which he later registered in.

55.     Jon Hall registered as a sex offender with the North Carolina Sex Offender Registry in Caldwell County and then soon re-registered in Burke County with the Burke County Sherriff's Office. I spoke with Robin Jennings of the Burke County Sherriff's Office who oversees the sex offender registry for Burke County. Jennings reported that Jon Hall listed a residential address of 103 Hickory Hills Drive in Morganton, North Carolina and reported a phone number of 910-391-8077 as being his contact phone number. I further found that in reviewing Hall's active sex offender registry information, that he had listed the Google Gmail account of fordfan111793@gmail.com as being his account to contact.

56.     Jennings stated that the Burke County Sherriff's Office had last made contact with Jon Hall on 03/15/2022 at 103 Hickory Hills Drive in Morganton. Detective Penny Smith was the primary investigator for the contact.

North Carolina ICAC CyberTip 110495549:

57.     I spoke with Detective Penny Smith and Det. Lowdermilk of the Burke County Sherriff's Office. Detectives stated that their agency was assigned a NCMEC CyberTip of 110495549 from ESP Instagram.

g.    The North Carolina ICAC office was assigned CyberTip 110495549 on 01/12/2022. The CyberTip was then assigned to Det. Lowdermilk. In reviewing the CyberTip, Instagram reported to NCMEC on 12/12/2021 that a user with USER ID 48667462858 had uploaded one video file of sexually explicit material of a minor. Instagram also provided the profile picture to the suspect account.

19

Neither the video nor image file were reported to have been viewed by Instagram staff prior to reporting to NCMEC.

    h.  Instagram reported that the user's account information as follows:

        i.  Name: Zachary Hall

        ii.  Phone: <u>1-(910)-391-8077</u>

        iii.  Email Address: jonevans028@gmail.com

        iv.  Screen/User Name: zackaryhall1993

        v.  ESP User ID: 48667462858

58.    The phone number, <u>(910)-391-8077</u>, is consistent with that identified as belonging to Jon Hall and provided by Hall to the North Carolina Sex Offender Registry.  The email address of <u>jonevans028@gmail.com</u> is consistent with the username of "Jon Evans" as reported by Instagram in CyberTip 99290888.

59.    In my experience investigating cyber-crime, I have learned that devices that are actively signed into a Google account give access to Google to monitor activity by the device itself.  Image and video files uploaded, location data, internet search history and message content are a few examples of data monitored and saved by Google when synced with a device.

60.    On May 18, 2022 I made a preservation request for the Google accounts of <u>fordfan111793@gmail.com</u> , <u>jonevans028@gmail.com</u> , <u>jonhall717@gmail.com</u> and <u>shall6473@gmail.com</u>.  The assigned Google case number associated with the preservation requests is 18738827.

61.     On May 18, 2022 I made a preservation request for the Instagram accounts of fordfan111793@gmail.com , jonevans028@gmail.com , jonhall717@gmail.com and shall6473@gmail.com. The assigned Instagram case number associated with the preservation requests is 6955597.

62.     On May 18, 2022 and May 27, 2022, I made a preservation request for the Snapchat accounts of usernames "jon_e5143", "jon_david330" and "jonhall93". The assigned Snapchat case numbers associated with the preservation requests is 1401a064a2 and 38f165d03a.

63.     On June 2, 2022, I presented search warrants for the Google, Instagram and Snapchat accounts mentioned in this affidavit to Judge Roberts, who reviewed and signed the warrants for Google, Snapchat and Instagram. I submitted the signed search warrants to Google, Snapchat and Instagram and received account records from Snapchat and Instagram.

64.     In reviewing the Instagram records of Hall's accounts I found communication between Hall and other users believed to be children. In those communication messages Hall solicits male children to send him sexually explicit images and videos of themselves to Hall. A portion of the Instagram communications showed Hall offering to purchase pre-paid online gaming cards, referred to as "Shark Cards", for the children in return for nude images and videos. Hall also had conversations with recipients regarding paying recipient users via the "Cash App" online application.

65.     Google responded on June 13, 2022 that the signed search warrant required Google to make subjective or relevance determinations. After referring to Assistant Attorney General Paul Rucha regarding the issue reported by Google, I removed language in the initial

Google search warrant and presented a revised Google search warrant to Judge Michael Roberts on 06/14/2022. Judge Roberts signed the search warrant and a copy of the revised signed warrant was submitted to Google on 06/15/2022.

66.     Google responded with a large amount of account records for all four Google accounts requested. Computer Forensic Analyst Victoria Brennan was assigned the Google account records to examine and process through Axiom, a computer forensic software allowing for easier navigation and parsing of high volume digital records.

67.     As CFA Brennan processed the Google records she identified the Google account of fordfan111793@gmail.com as containing evidence relevant to this investigation into Jon Hall. Part of that evidence found on the account records of fordfan111793@gmail.com was a substantial amount of sexually explicit material of male children.

68.     I informed CFA Brennan that I had found communications between Hall and other male individuals, believed to be children, where Hall had offered to purchase pre-paid online gaming cards, referred to as "Shark Cards", if the children provided Hall with sexually explicit material of themselves to him.

69.     I also informed CFA Brennan that I had found communication between Hall and other male individuals where Hall offered to send the male individual money via the Cash App online application.[3]

---

[3] a.     Cash App is a mobile payment service developed by Block, Inc., that allows users to transfer money to one another using a mobile-phone app. The service is available only in United Kingdom and the United States. (ref: https://www.google.com/search?q=what+is+cash+app&rlz=1C1GCEA_enUS880US880&ei=mgPPYuiYNK-liLMPheGF4AE&ved=0ahUKEwjozYbGtPb4AhWvEmIAHYVwARwQ4dUDCA4&uact=5&oq=what+is+cash+ap

70.     With CFA Brennan being advised of references to "Cash App" and "Shark

Cards," she searched for content related to those terms as to find any data relevant to the

communications found on Hall's Instagram account records.  CFA Brennan advised me that she

had found a large amount of Cash App receipts, showing money sent from Hall's account to

other recipients.  CFA Brennan stated she had found messages sent from Hall and to Hall

referencing money sent from Hall's Cash App account; and those messages showed Hall's

account soliciting the recipients for sexually explicit material of the recipient user.  CFA

Brennan stated that the recipient users receiving money and messages from Hall's account had

account profile pictures that appeared to demonstrate the recipient users were children.

71.     I asked CFA Brennan if any location information was provided in the records.

CFA Brennan stated that there was location information provided by Google to the extent where

she could see the account user's location in the metadata connected to internet artifacts such as

internet searches and websites visited.

72.     CFA Brennan stated that all evidence of sexually explicit material, location data

and financial data was found on the account of fordfan111793@gmail.com and no other

associated account covered in the original Google search warrant.

73.     With this information provided to me by CFA Brennan I reviewed my signed

Google search warrant and found that it did not cover financial or location data of the user's

---

p&gs_lcp=Cgdnd3Mtd2l6EAMyCAgAEIAEELEDMggIABCABBCxAzIFCAAQgAQyBQgAEIAEMgUIABCAB
DIFCAAQgAQyBQgAEIAEMgUIABCABDIFCAAQgAQyBQgAEIAEOgcIABBHELADOgUIIRCgAToFCCEQ
qwI6CAghEB4QFhAdOgUIABCRAjoLCAAQgAQQsQMQgwE6CAgAELEDEJECOggIABCxAxCDAToICC4Qg
AQQsQNKBAhBGABKBAhGGABQpwNYuzJgizRoAnABeAGAAZQBiAG2F5IBBDcuMjCYAQCgAQHIAQjA
AQE&sclient=gws-wiz as of 07/13/2022)

account. I advised CFA Brennan to stop her examination as I applied for a new warrant covering financial and location data.

74.    The Google records, which included the records related to the location and financial records were physically located on Computer Crime Unit servers in Vassalboro, Maine. On 07/14/2022 I presented a search warrant for location and financial records of the Google return to Justice Stokes. Justice Stokes reviewed and signed the search warrant on 07/14/2022. After the warrant was signed, I contacted CFA Brennan and advised her to continue with her forensic examination into the records and provided her with a copy of the signed search warrant. In total, there were three signed Google search warrants with one records response from Google.

75.    CFA Brennan continued her forensic examination of the records provided by Google and located records on the Google account of fordfan111793@gmail.com related to the use of CashApp as well as location information showing the use of the fordfan111793@gmail.com account in Maine and North Carolina. The account was used in Maine during the months of May 2021 through July of 2021 and used in North Carolina in the months of July 2021 through May of 2022; consistent with the information learned through the course of this investigation.

76.    On 08/25/2022 I was contacted by Maine State Police Corporal Chris Rogers. Cpl. Rogers advised that Nancy Prince, owner of the Four Corners Store in Gardiner had reported to Cpl. Rogers that a man named Jon Hall was living in a house across the street from the store. Prince reported to Cpl. Rogers that Hall was a known offender on the Sex Offender Registry and that he was living in the residence with several children. Prince stated Hall had come into the store on 08/25/2022 and made her feel uncomfortable. Prince directed Cpl. Rogers

24

to Hall's residence located across the street from the store. Cpl. Rogers identified the residence as being 7 Town House Road in West Gardiner.

77.     Cpl. Rogers called the Gardiner Town Office and spoke with Town Clerk Angela Phillis. Phillis confirmed that Hall had been into the Town Office on 08/25/2022 with a female identified as Megan Thurlow. Thurlow was registering a vehicle, ME PC 229-ATB, a silver 2015 Chevrolet Tahoe with a registered address of 7 Townhouse Road, West Gardner, Maine. Town Clerk Phillis knew Hall and knew him to be a sex offender. Phillis spoke with Hall to ascertain if he was going to register in Maine. Hall told Phillis that he was moving back to Maine.

78.     On 08/26/2022, I along with Agents from Homeland Security Investigations (HSI) were conducting surveillance on suspect Jon Hall, pursuant to a separate investigation into child pornography investigated by the Maine State Police Computer Crimes Unit and Homeland Security. The investigation into child pornography is documented in Maine State Police incident 21S030589. Pursuant to 21S030589 I had obtained a search warrant for the residence of 7 Townhouse Road in West Gardiner along with the person of Jon Hall. The search warrant, signed by Justice Brent Davis on 08/26/2022, allowed for the search of Jon Hall's person, wherever he may be located in the State of Maine as well as the residence of 7 Townhouse Road.

79.     On 08/29/2022 I along with Special Agent Laurie Northrup conducted surveillance on the residence of 7 Townhouse Road in West Gardiner. As we set up surveillance on the residence I observed several people exit the residence and enter a Chevrolet Tahoe, I did not see the operator.

80.     I watched as the Tahoe, ME BC 229-ATB, backed out of the driveway and onto Townhouse Road. The vehicle crossed the intersection and entered Sears Corner Road. I knew that Kennebec County Sherriff's Deputy Phil Lynch was parked down the road. I called Deputy Lynch and advised him that the vehicle had left and there was an unknown driver. I asked Deputy Lynch to find an independent violation to stop the vehicle in hopes of identifying who the driver was without compromising our primary surveillance mission.

81.     While speaking with Deputy Lynch over the phone he advised that he could see the suspect vehicle and that it did not have a front license plate, as required by Maine Law in Title 29-A Section 452. Deputy Lynch followed the vehicle as it turned left onto Lewiston Road. Deputy Lynch initiated a traffic stop on Lewiston Road. Special Agent Northrup and I arrived soon after.

82.     Upon my arrival to the traffic stop Deputy Lynch was already walking back from the suspect vehicle with several license cards in his hand. Deputy Lynch advised that Jon Hall was the operator of the vehicle. Special Agent Northrup and I immediately went to the driver seat of the vehicle. I recognized the driver of the vehicle as being Jon Hall from his driver's license photo along with social media photos. Hall was actively talking on an Apple iPhone that he was holding. I could see on the screen of the phone that it read "Mom". Hall told me that he was speaking to his mother.

83.     I seized and placed Hall's cellphone into airplane mode. I secured the phone in my cruiser and placed it into a faraday bag. Hall's Apple iPhone was placed into evidence and titled as evidence item 2.

26

84.     I reapproached Hall and his occupants and first spoke with the female in the vehicle, identified as Megan Thurlow. Thurlow stated that Hall had been staying with her at her residence for the last couple days. Thurlow stated that she only saw him with the Apple iPhone that he had in his possession. Thurlow stated that Hall had been sleeping in her living room while staying at her residence.

85.     Hall stated that the only device he brought with him back to Maine from North Carolina was his Apple iPhone. Hall denied having any old phones or any Android phones. Hall stated that he was actually preparing to trade in his current iPhone and purchase a new Apple iPhone 13 ProMax.

86.     Hall asked if he was free to leave because he had to transport Megan to work. At this time I placed Hall under arrest for Violation of Conditions of Release for not providing a correct address on his bail conditions. Hall argued the decision to arrest. Hall also refused to answer any questions without speaking to an attorney.

87.     Kennebec County Deputy Sherriff York arrived on scene. I transferred custody of Hall to Deputy York who transported Hall to the Kennebec County Jail where he was booked and charged with Class E Violation of Conditions of Release.

88.     I along with several other Special Agents returned to 7 Townhouse Road in West Gardiner with homeowner Megan Thurlow to execute the residence portion of the search warrant. Thurlow guided us inside to the Livingroom where she pointed out a recliner which she identified as the place Hall had been sleeping while staying in her house. I observed an Apple iPhone charger inside the recliner cushion along with a green suitcase next to the recliner. I

opened up the suitcase and found several pairs of male's pants and underwear. The pants were all the same size, 42x32, and were of a large size consistent to that of Jon Hall. The other male, Keith Brasslett, was very small and only weighed 130 pounds. Brasslett and Thurlow both were shown the green suitcase, both denied ownership of the suitcase. A further search of the suitcase revealed a Motorola cellphone placed in the front pocket. Both Thurlow and Brasslett denied ownership or knowledge of the phone.

89.     I photographed the residence, the living room recliner, the suitcase, the clothing in the suitcase and the cellphone found in the suitcase. I seized the Motorola cellphone and placed it into evidence, where it was titled as evidence item 3. I provided Megan Thurlow with a copy of the search warrant and inventory.

90.     Special Agent Kratzke and I responded to the Kennebec County Jail where we met with Jon Hall in booking. I issued Hall a copy of the search warrant and inventory form. I did not ask Hall any questions but did explain what we had taken from the residence. Hall identified the suitcase as belonging to him and that all he had in it was his clothing. When Hall was told of the Motorola cellphone located in the suitcase, he denied knowing the phone was in there and stated that his roommate, Austin Simmons, had packed his bag and must have put it in there.

91.     Special Agent Kratzke and I cleared the jail at this time. I transferred custody of the two phones, identified as Evidence item numbers 2 and 3, to Special Agent Kratzke. Special Agent Kratzke transferred custody of the phones to Special Agent Kelley who began a forensic examination on the two devices.

28

92.     With Hall arrested and confined at Kennebec County Jail, I submitted my Probable Cause report to the Kennebec Jail intake later in the day of 08/29/2022. Jail staff confirmed receipt of the report.  On 09/01/2022 I was advised that Kennebec Jail staff had released Hall from the facility.  I spoke with Jail staff and was advised that they had forgot to send my Probable Cause report to a Judge within 48 hours of Hall being admitted into the jail. Since Hall's Probable Cause was not reviewed within 48 hours by a Judge, Jail staff released him from custody without charge and without any pending court date.

93.     On 09/02/2022 I met with Homeland Security Special Agent Greg Kelley.  S/A Kelley confirmed that Hall's Apple iPhone, referred to as evidence item 2, was still in the process of being examined using forensic tools.  S/A Kelley confirmed that the examination of Hall's iPhone had produced over 150 image and video files of sexually explicit material of pubescent and pre-pubescent aged children.  The images and videos of sexually explicit material depicted children engaged in sexual acts with themselves, other children and other adults.  Some of which were found to be sent to other users online by Hall's accounts and device.  Three examples of contraband files are attached to this affidavit.  Exhibit 1, a still shot from a video, is described below.  Two additional images are described as follows:

i.  The video still shot photo titled "6908020707263043848" (Exhibit 1) was created on the device with a date of February 20, 2022 and saved in users accessible data in Hall's photo gallery.  The image depicts a pubescent aged male child, approximately 13-16 years of age, pulling his pants down in front of a camera, exposing his penis and scrotum and buttocks to the camera.  A text across the

screen reads "Shh". The child has been identified as Victim C by showing the video file to Victim C on 09/07/2022.

j.   The photo titled "IMG_0275" (Exhibit 2) was created on the device with a date of August 14, 2022 and saved in the users accessible data in Hall's photo gallery. As stated above, "IMG_0275" depicts a prepubescent male child approximately 3-6 years old with his blue pants pulled down and the image is focused on the child's erect penis.

k.   In addition, a photo titled "IMG_0277" was created on the device with a date of August 14, 2022 and saved in the users accessible data in Hall's photo gallery. "IMG_0277" depicts a prepubescent male child approximately 3-5 years old laying on his back on a bed with his underwear around the child's calves. The child's underwear has a tag displaying "4T." There appears to be an adult hand holding the leg of the child with the focus of the image being the child's erect penis and anus. A copy of this image is attached under seal as Exhibit 3.

94.   Special Agent Kelly further advised that Hall's Apple iPhone, evidence item 2, showed it was restored from Apple iCloud backup associated with the Apple ID of jonhall1993@hotmail.com. A review of the pictures and videos recovered from evidence item 2 indicates that the files were restored from Hall's iCloud backup account. On 09/06/2022 Special Agent Abby Kratzke preserved the Apple account of jonhall93@icloud.com and associated account email jonhall1993@hotmail.com.

95.     I viewed chat conversations found on Evidence Item 2 from the ESP of Telegram. In viewing the chat conversations I found Hall's account was communicating with a known sex offender living in Maine.  One particular conversation between Hall and the known Maine sex offender detailed a plan for them to drive to Eustis, Maine to have sex with a 15-year old male child together; the male child was known to Hall.  In this conversation Hall also makes comments admitting to having deleted his Apple iCloud account and suggesting to the known Maine sex offender to delete his.

96.     S/A Kelley also found images of a male child, approximately 8 to 10 years in age, sleeping in a bed without a shirt on.  In the image an adult male is seen cuddling with the male child and taking multiple selfie-style pictures of himself and the child cuddled up against each other.  It appears the adult and child are cuddling in an intimate manner.  A paper restaurant menu is visible in the background on the bed, with a physical address showing a restaurant located in Auburn, Maine. I identified the adult male in the images as being Jon Hall.

97.     S/A Kelley showed me a video file depicting a male child approximately 13 to 16 years in age.  The male child is shown removing his clothing and displaying his genitals to the camera in a lewd manner.  I identified the male child as being the same male child depicted in paragraph 87, though several years older at the time of the video.  During the course of my investigation I identified the victim and will refer to him as Victim C.

98.     On 09/07/22 I made contact with Victim C, who is now 17 years old.  Victim C viewed both the image and video files described in paragraphs 87 and 88 and identified the child depicted in each file as himself.  Victim C stated he was approximately 7 or 8 years old at the time of the images described in paragraph 87.  Victim C stated that the video described in

paragraph 88 was made in 2017 or 2018, which time Victim C would have been 12 to 13 years old at the time of the video.

99.    Victim C explained that he was the victim of sexual abuse and exploitation by Jon Hall for a period of up to 10 years.  Victim C stated that Hall had molested and raped him during this time as well as solicited him for nude images to which Hall paid Victim C numerous times to an amount of approximately $1,000 in total payments.

100.    Victim C also advised that Hall had recently tried to contact him on 08/18/2022 through third-party contacts.  Victim's C's girlfriend and a mutual friend were both contacted by Hall's social media accounts inquiring on contacting Victim C.

101.    Victim C stated that he was contacted by a mutual friend on 08/20/2022 who told Victim C that Hall had been trying to find Victim C.

102.    Victim C stated that that he had spoken with a 15-year old male friend who told Victim C that he had been contacted by Hall and solicited for nude images from Hall.

103.    On 09/02/2022 I along with Special Agents from the Maine State Police Computer Crimes Unit and Homeland Security conducted surveillance on 87 Collins Road in Chelsea. We attempted to make contact at the residence, though no one answered the door.  I spoke with Hall's mother, Sharon Hall, via her cellphone.  Sharon was very angry with me for arresting her son and was uncooperative in providing Hall's location.

104.    Due to the ongoing Computer Crimes Unit investigation into Jon Hall, 21S030589, additional evidence has been found concerning the safety of children local to Maine, creating a need to find and secure Hall on charges readily available.  With Hall being released

from the Kennebec County Jail without a court date and without being charged with any crimes due to a jail error and Hall and his family being unwilling to meet with me to serve him summons for the above-mentioned crimes; the need for an arrest warrant was evident as to ensure Hall is charged with Violation of Conditions of Release and Failure to Comply with Sex Offender Registry.

105.    On 09/09/2022 I applied for a warrant for the charges of Violation of Conditions of Release and Failure to Comply with Sex Offender Registry. The Kennebec District Attorney's Office filed a complaint for the charges and a Judge signed the warrant. In connection to the Kennebec arrest warrant, the Penobscot District Attorney's Office filed a motion to revoke bail conditions they had on Hall on a pending Penobscot charge of assault, which resulted in a second arrest warrant for Hall for bail revocation.

106.    On 09/11/2022, Special Agent Laurie Northrup and I met with a confidential informant who was friends with Jon Hall on the social media platform Snapchat. A feature of the Snapchat platform is a location map that shows the location of all of the account user's friends who are actively using Snapchat. The confidential informant showed us the location of Jon Hall's device that was logged into his Snapchat account. I viewed the map and found it to be at a trailer on Stevens Mill Park Road in Auburn. The informant also advised that Hall was again driving his Lexus vehicle, previously known to be North Carolina Registration JMR 7822.

107.    Special agent Northrup and I drove to the trailer park on Stevens Mill Park Road in Auburn. Upon arrival we located Hall's vehicle, NC JMR 7822 parked in the driveway of 11 Stevens Mill Park Road in Auburn. As we drove by, I observed a male exit the residence and

33

step onto the outside deck. I recognized the male as being Jon Hall. I stopped and approached Hall on the deck and arrested him for his warrants.

108.    While arresting Hall, he yelled to his friend who was sitting in Hall's vehicle to call his mother (Hall's mother). Hall told his friend to use his cellphone (Hall's cellphone) and that the passcode to the phone was "9395". As Hall's friend began to type in the passcode to the phone, Special Agent Northrup seized the phone and secured it in her possession as evidence in preparation for a search warrant. I placed the phone into airplane mode as to protect the phone from being remotely accessed by a remote user.

109.    Hall was very upset with the seizure of his phone. Hall identified the phone as belonging to him several times throughout our contact. Hall argued that the detectives had no right to seize the phone.

110.    Hall was transported to the Androscoggin County Jail and booked under his active arrest warrants. I transported Hall's cellphone, which was a new-style black Apple iPhone encased in a black Otter brand case, to the Troop E barracks CCU field office. I secured the phone in a faraday box and admitted it into evidence in incident 21S030589 and titled it as evidence item 4.

111.    I know based on my training and experience, that mobile devices such as Apple iPhones, are often connected to a remote storage platform, allowing the user to access content from numerous devices using the same operating system and same personal account, such as an Apple ID. Apple products in particular use a remote storage platform called an iCloud account, which allows a user to access saved content such as images, videos, text messages and apps from

34

one iPhone to a second iPhone. Considering I seized evidence item 2 from Hall on 08/29/2022, which was an Apple iPhone and contained over 150 image and video files of sexually explicit material of pubescent and pre-pubescent aged children; I assessed it as more probable than not that Hall's newest and current cellphone, evidence item 4, which is also an Apple iPhone, would contain at least some of the same content accessed by Hall's Apple iCloud account. The presence of both Facebook Messenger and Snapchat accounts found on the screen face of item 4 are consistent with that of the same applications found on evidence item 2 as found by Special Agent Greg Kelley during a forensic examination of evidence item 2.

112.   While securing evidence item 4 into airplane mode I observed several notifications listed on the screen such as 4 pending Snapchat notifications, 2 text messages, 5 notifications on Facebook Messenger and a notification from the Sideline account app. Sideline's publicly available information states:

l.   Sideline is a paid subscription mobile app that gives you a 2nd phone number on your smartphone to let you divide your communications easily and without confusion.  (https://support.sideline.com/hc/en-us/articles/208277836-Calling-FAQs as accessed on 09/13/2022)

m.   Sideline website states:  Sideline does not support end-to-end encryption of text messages, however, our servers are encrypted. What this means: Your message is secure from the time you send it to when it hits our servers. This is referred to as 'on-net messaging' which means that we have control over the encryption. (https://support.sideline.com/hc/en-us/articles/360023052731-Can-Sideline-encrypt-text-messages- as accessed on 09/13/2022)

113.    On 09/15/2022 U.S. Magistrate Justice Nivison signed a search warrant for the device of evidence item 4. Special Agent Kelly was assigned evidence item 4 for forensic examination and found the device contained an Apple ID of zhall2022@icloud.com and an Apple associated account email address of fordfan111793@gmail.com. In speaking with S/A Kelly I learned that several sexually explicit images of children that had been found on Evidence Item 2 were also found on Evidence Item 4 and were listed as being apart of backup files. This would indicate that the images were retrieved from data stored on an Apple account remotely accessed by the device of Evidence Item 4.

114.    In reviewing messages found on Evidence Item 4 I observed Hall make admissions to other users he was communicating with regarding the Police seizing Evidence item 2 and Hall having taken actions of deleting data on the phone remotely and having remotely locked evidence item 2 by reporting the phone stolen to Apple. Hall states that the Police will not be able to access evidence item 2 as Apple will not allow access into the device. Hall further states in communications with other users that he had created a new Apple ID to utilize the device that was later seized and titled as Evidence Item 4. At this time no evidence has been discovered forensically on Evidence Item 2 or Evidence Item 4 to show Hall having deleted content after his release from Kennebec County Jail on 08/31/2022. Furthermore, SA Kelly had already obtained the passcode to access the devices of evidence item 2 and 4 and both devices were secured in Airplane mode, protecting them from having any remote access made to them.

115.    Special Agent Kelly had also been assigned evidence item 2 for forensic examination, pursuant to a Maine State search warrant signed by Justice Brent Davis on 08/26/2022. Special Agent Kelley discovered two account identifiers on Evidence item 2 associated to his icloud accounts in HALL's iphone user data. The account identifiers were

jonhall1993@hotmail.com and jonhall93@icloud.com . In the settings, in the about tab, the phone's name is Jon Hall with an Apple ID of **jonhall1993@hotmail.com.** The email **jonhall93@icloud.com** shows an association to HALL's Apple Facetime account in the extraction.

116.    On September 6, 2022 SA Kratzke sent Apple a preservation request for the TARGET Apple iCloud account and associated identifier of **jonhall1993@hotmail.com** and **jonhall93@icloud.com**. Apple provided a confirmation number of 202200051116 to confirm receipt of the preservation request.

a.    On 11/02/2022 I researched Apple's terms of service, via https://wupport.apple.com, and found that if a user deletes an Apple iCloud account or data within such account, the data is still retrievable for a period of 30 days after the user's delete request.  With Hall's Apple iCloud account being preserved on 09/06/2022, 7 days after his release from Kennebec County Jail, data pertaining to Hall's iCloud account will still be available due to the preservation having occurred within 30 days of Hall's potential actions to delete the account or data within.

117.    Through the course of this investigation, numerous cellular phone numbers were identified as being used and subscribed to by Jon Hall.  Cellular carriers such as Verizon, US Cellular and AT&T were all found to issue phone numbers to Hall, which were captured in various CyberTips, suspect accounts and witness interviews.   Numerous subpoenas were issued to the providers which provided subscriber information.  The subscriber information provided customer information identifying Jon Hall and his associates as being assigned the suspect phone numbers as well as device identifiers, identifying the particular make of mobile device utilizing

the cell number. In reviewing these records I observed Hall utilize several different Apple iPhone devices along with Android devices as well. The use of numerous Apple iPhone devices is significant as the user would have to log into an Apple account to retrieve phone contacts, pictures, applications and other data that would be able to carry over from one Apple device to another.

118. On 10/06/2022, Special Agent Kratzke and I made contact with Victim A. Victim A stated that Hall had asked him to send nude images and videos of himself to Hall in return for various gifts such as currency, alcohol, marijuana, tobacco and a cellphone. Victim A admitted to producing and disseminating nude images and videos of himself to Hall approximately 50 different times; and received in return $2,000 to $3,000 worth of gifts and cash. Victim A stated that he would send the nude images and videos to Hall via Apple iMessages, which is regular cellular text messages between Apple iPhone users. Victim A stated that he remembered Hall's Apple account as being something pertaining to "fordfan" as he could see it through the iMessages.

## BACKGROUND CONCERNING APPLE[4]

119. Apple is a United States company that produces the iPhone, iPad, and iPod Touch, all of which use the iOS operating system, and desktop and laptop computers based on the Mac OS operating system.

---

[4]     The information in this section is based on information published by Apple on its website, including, but not limited to, the following document and webpages: "U.S. Law Enforcement Legal Process Guidelines," available at https://www.apple.com/legal/privacy/law-enforcement-guidelines-us.pdf; "Create and start using an Apple ID," available at https://support.apple.com/en-us/HT203993; "iCloud," available at http://www.apple.com/icloud/; "What does iCloud back up?," available at https://support.apple.com/kb/PH12519; "iOS Security," available at

120.    Apple provides a variety of services that can be accessed from Apple devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps").  As described in further detail below, the services include email, instant messaging, and file storage:

a.      Apple provides email service to its users through email addresses at the domain names mac.com, me.com, and icloud.com.

b.      iMessage and FaceTime allow users of Apple devices to communicate in real-time.  iMessage enables users of Apple devices to exchange instant messages ("iMessages") containing text, photos, videos, locations, and contacts, while FaceTime enables those users to conduct audio and video calls.

c.      iCloud is a cloud storage and cloud computing service from Apple that allows its users to interact with Apple's servers to utilize iCloud-connected services to create, store, access, share, and synchronize data on Apple devices or via icloud.com on any Internet-connected device.  For example, iCloud Mail enables a user to access Apple-provided email accounts on multiple Apple devices and on iCloud.com.  iCloud Photo Library and My Photo Stream can be used to store and manage images and videos taken from Apple devices, and iCloud Photo Sharing allows the user to share those images and videos with other Apple subscribers.  iCloud Drive can be used to store presentations, spreadsheets, and other documents.  iCloud Tabs and bookmarks enable iCloud to be used to synchronize bookmarks and webpages opened in the Safari web browsers on all of the user's Apple devices.  iCloud Backup allows users to create a backup of their device data.  iWork Apps, a suite of productivity apps (Pages,

---

https://www.apple.com/business/docs/iOS_Security_Guide.pdf, and "iCloud: How Can I Use iCloud?," available at https://support.apple.com/kb/PH26502.

Numbers, Keynote, and Notes), enables iCloud to be used to create, store, and share documents, spreadsheets, and presentations. iCloud Keychain enables a user to keep website username and passwords, credit card information, and Wi-Fi network information synchronized across multiple Apple devices.

      d.     Game Center, Apple's social gaming network, allows users of Apple devices to play and share games with each other.

      e.     Find My iPhone allows owners of Apple devices to remotely identify and track the location of, display a message on, and wipe the contents of those devices. Find My Friends allows owners of Apple devices to share locations.

      f.     Location Services allows apps and websites to use information from cellular, Wi-Fi, Global Positioning System ("GPS") networks, and Bluetooth, to determine a user's approximate location.

      g.     App Store and iTunes Store are used to purchase and download digital content. iOS apps can be purchased and downloaded through App Store on iOS devices, or through iTunes Store on desktop and laptop computers running either Microsoft Windows or Mac OS. Additional digital content, including music, movies, and television shows, can be purchased through iTunes Store on iOS devices and on desktop and laptop computers running either Microsoft Windows or Mac OS.

      121.    Apple services are accessed through the use of an "Apple ID," an account created during the setup of an Apple device or through the iTunes or iCloud services. The account identifier for an Apple ID is an email address, provided by the user. Users can submit an Apple-provided email address (often ending in @icloud.com, @me.com, or @mac.com) or an email address associated with a third-party email provider (such as Gmail, Yahoo, or Hotmail). The

Apple ID can be used to access most Apple services (including iCloud, iMessage, and FaceTime) only after the user accesses and responds to a "verification email" sent by Apple to that "primary" email address. Additional email addresses ("alternate," "rescue," and "notification" email addresses) can also be associated with an Apple ID by the user. A single Apple ID can be linked to multiple Apple services and devices, serving as a central authentication and syncing mechanism.

122.    Apple captures information associated with the creation and use of an Apple ID. During the creation of an Apple ID, the user must provide basic personal information including the user's full name, physical address, and telephone numbers. The user may also provide means of payment for products offered by Apple. The subscriber information and password associated with an Apple ID can be changed by the user through the "My Apple ID" and "iForgot" pages on Apple's website. In addition, Apple captures the date on which the account was created, the length of service, records of log-in times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to and utilize the account, the Internet Protocol address ("IP address") used to register and access the account, and other log files that reflect usage of the account.

123.    Additional information is captured by Apple in connection with the use of an Apple ID to access certain services. For example, Apple maintains connection logs with IP addresses that reflect a user's sign-on activity for Apple services such as iTunes Store and App Store, iCloud, Game Center, and the My Apple ID and iForgot pages on Apple's website. Apple also maintains records reflecting a user's app purchases from App Store and iTunes Store, "call invitation logs" for FaceTime calls, "query logs" for iMessage, and "mail logs" for activity over an Apple-provided email account. Records relating to the use of the Find My iPhone service,

including connection logs and requests to remotely lock or erase a device, are also maintained by Apple.

124.    Apple also maintains information about the devices associated with an Apple ID. When a user activates or upgrades an iOS device, Apple captures and retains the user's IP address and identifiers such as the Integrated Circuit Card ID number ("ICCID"), which is the serial number of the device's SIM card.  Similarly, the telephone number of a user's iPhone is linked to an Apple ID when the user signs into FaceTime or iMessage.  Apple also may maintain records of other device identifiers, including the Media Access Control address ("MAC address"), the unique device identifier ("UDID"), and the serial number.  In addition, information about a user's computer is captured when iTunes is used on that computer to play content associated with an Apple ID, and information about a user's web browser may be captured when used to access services through icloud.com and apple.com.  Apple also retains records related to communications between users and Apple customer service, including communications regarding a particular Apple device or service, and the repair history for a device.

125.    Apple provides users with five gigabytes of free electronic space on iCloud, and users can purchase additional storage space.  That storage space, located on servers controlled by Apple, may contain data associated with the use of iCloud-connected services, including: email (iCloud Mail); images and videos (iCloud Photo Library, My Photo Stream, and iCloud Photo Sharing); documents, spreadsheets, presentations, and other files (iWork and iCloud Drive); and web browser settings and Wi-Fi network information (iCloud Tabs and iCloud Keychain). iCloud can also be used to store iOS device backups, which can contain a user's photos and videos, iMessages, Short Message Service ("SMS") and Multimedia Messaging Service

42

("MMS") messages, voicemail messages, call history, contacts, calendar events, reminders, notes, app data and settings, Apple Watch backups, and other data. Records and data associated with third-party apps may also be stored on iCloud; for example, the iOS app for WhatsApp, an instant messaging service, can be configured to regularly back up a user's instant messages on iCloud Drive. Some of this data is stored on Apple's servers in an encrypted form but can nonetheless be decrypted by Apple.

126. In my training and experience, evidence of who was using an Apple ID and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

127. For example, the stored communications and files connected to an Apple ID may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

128. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Apple can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant

43

time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

129.   Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

130.   Other information connected to an Apple ID may lead to the discovery of additional evidence. For example, the identification of apps downloaded from App Store and iTunes Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators such as Facebook, Instagram, Telegram, and KIK. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

131.   Therefore, Apple's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Apple's services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

132.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the account described in Attachment A to seek the items described in Attachment B. That Jon Hall is a suspect in a CCU investigation regarding child pornography found on Hall's tablet, social media accounts and cellphones, which were found to contain evidence of the commission of the following crime: 18 U.S.C. §§ 2252, 2251, 2422 and 2252A, which prohibit a person from knowingly transporting, receiving, distributing, producing, enticing, soliciting, possessing or accessing with intent to view, in interstate or foreign commerce, or by using any facility or means of interstate or foreign commerce, child pornography, as defined in 18 U.S.C. Section 2256(8).  18 U.S.C. §§ 2252(b) and 2252A(b) also make it a crime to attempt to commit such acts regarding child pornography.

133.    That child pornography found on evidence items 1 and 2 depicted images and videos of a male children identified as, Victim A, a 15-year-old male and Victim C, who was 13 years old at the time of the described video.  That upon speaking with Victim A and Victim C it was learned Hall had previously solicited both children for nude images and was given numerous gifts, including a cellphone and currency for those nude images.  That upon speaking with Victim A and Victim C he confirmed that he did in fact send Hall numerous images and videos of himself nude in exchange for currency and various gifts in the amount of more than $1,000.

134.    That child pornography found on evidence item 2 contained over 150 image and video files of sexually explicit material of pubescent and pre-pubescent aged children.  The images and videos of sexually explicit material depicted children engaged in sexual acts with

themselves, other children and other adults. Some of files were found to be sent to other users online by Hall's accounts and device.

135.    That in review of chat conversations found on evidence item 2, Hall's account was found to be conversing with known sex offenders living in Maine. One particular conversation between Hall and a known Maine sex offender listed out a plan for them to drive to Eustis, Maine to have sex with a 15-year old male child together.

136.    That Hall had been using a variety of social media accounts under a fake name of "Zachary Hall". These accounts provided an anonymity to Hall's use and aided in avoiding detection by law enforcement online. Hall's use of these accounts connected to the alias of "Zachary Hall" were committed in North Carolina and Maine. Hall had previously used his social media accounts to send and receive sexually explicit material of children as evident in the various NCMEC CyberTips reporting Hall's access and actions with sexually explicit material noted throughout the investigation. Hall's accounts included the use of Instagram, Facebook and Snapchat which had usernames of "Zachary Hall", "z_hall2022111" and "zackaryhall1993"

137.    That the use of the Facebook account "Zachary Hall " was used by Hall within recent time as he attempted to make contact with Victim C on 08/18/2022 as well as 08/19/2022.

138.    That the use of the Snapchat account "z_hall2022111" was used on 09/11/2022 as evident to the location of Hall's account using an informant's Snapchat account mapping called "Snap Map".

139.    That the use of the Instagram account "zackaryhall1993" was used by Hall to upload sexually explicit material in December of 2021 while residing in North Carolina. North

Carolina investigated CyberTip 110495549 at the time and confirmed Hall was residing in North Carolina.

140.    That the Apple iPhone, referred to as Evidence Item 4, was found to have several notifications on the screen showing the use of Snapchat, Facebook Messenger and that of Sideline; which all offer services and platforms that are consistent with accessing, disseminating and soliciting sexually explicit material via those platforms.

141.    That through police records and witness interviews it was discovered that Hall has resided at several residences to include Maine, North Carolina and most recently returning to Maine. Hall's proclivity to travel and reside in numerous locations in conjunction for keeping the same accounts, such as the Google account of fordfan111793@gmail.com show Hall's action in transporting content embedded in those accounts such as sexually explicit material.

142.    That through investigation it was discovered Hall was subject to a NCMEC CyberTip 110495549, to which Hall's Instagram account was found to have uploaded sexually explicit material while residing in North Carolina. Contact was made with Hall by North Carolina law enforcement who confirmed he was residing at the target residence in North Carolina. This further details Hall's access to sexually explicit material in numerous states including Maine and North Carolina.

143.    That based on my training and experience in Apple iCloud systems, I know that mobile devices such as Apple iPhones are often connected to remote storage platforms such as that known as iCloud. These remote storage platforms allow a user to access content using multiple devices using the same operating system and personal account, such as an Apple ID.

47

144.   That in reviewing cellular records through this investigation I observed Hall's phone accounts utilizing several Apple and other brand devices to utilize cellular data. Hall has also utilized several Apple iCloud accounts with different Apple IDs, due to the difference in Apple ID and iCloud accounts found on Evidence item 2 and Evidence item 4. In review of forensics of Evidence Item 4 it was found that several sexually explicit images of children that had been previously found on Evidence Item 2 were also uploaded and found on Evidence Item 4. This signifies access from Hall's Apple ID account that was found on Evidence 2 and then uploading data into a new Apple ID account found on Evidence Item 4, identified as zhall2022@icloud.com with associated email of fordfan111793@gmail.com.

145.   That message logs found on Evidence Item 4 show Hall making admissions of deleting data remotely from Evidence Item 2, remotely locking the device of Evidence Item 2 and utilizing a new Apple ID account; all to prevent law enforcement access to the data contained in the device of Evidence Item 2 as well as the associated Apple iCloud account as referenced in Attachment A.

146.   That in an interview of Victim A I learned of Hall soliciting and receiving child pornography via Apple iMessages, which is the cellular text messaging services between Apple iPhone users. Victim A also reported knowing Hall's Apple account as pertaining to an identifier of "fordfan", consistent to that found on evidence item 4 Apple ID associated email address.

147.   Victim A also reported having first met and communicated with Hall in December of 2020 and having first sent Hall nude images of himself in January of 2021 through November of 2021.

48

148.    That based on Hall's criminal history of soliciting children for nude images, possessing and disseminating sexually explicit material of children and the search warrant results for the Instagram, Snapchat and Google accounts associated with Hall, the above mentioned CyberTips and evidence item #1 and #2, I believe Jon Hall's Apple iCloud account, identified as jonhall93@icloud.com and jonhall1993@hotmail.com , likely possesses evidence of sexually explicit material of children and evidence of contact with victims and other suspects engaged in the solicitation, dissemination and production of sexually explicit material of children.

149.    Based on the Hall's travel from Maine to North Carolina, and later returning to Maine; I believe that location information found on Hall's iCloud account will show evidence of the commission of the aforementioned crimes committed in both the state of Maine as well as other states including but not limited to North Carolina, as reported in CyberTips.  I believe the iCloud account will also contain fruits and instrumentalities of such crimes.

150.    Based on the investigation in, to Hall's Apple iPhone, identified as evidence 4, seized on 09/11/2022, apps such as Snapchat, Facebook Messenger and Sideline were found. Each application is significant with Hall's involvement in possessing, disseminating, producing, transporting and soliciting sexually explicit material.  On Hall's Apple iPhone, evidence 2, conversations were found between Hall and known victims using Snapchat and Facebook Messenger.  I believe that the iCloud account will contain evidence showing that Hall owned and controlled such account used in the commission of the above-described offenses, and that application and account user data stored in the account will further confirm the identity of Hall and others as participants in these offenses.

151.    I further believe that evidence of these crimes will be found in the referenced Apple iCloud account which was discovered during the forensic examination of evidence item 2. The pattern of use of Hall's Apple devices indicates that the devices were connected to different Apple iCloud accounts and that activity on the devices was backed up to Apple iCloud accounts. The evidence also indicates that new devices Hall came to possess were restored with data from the Apple iCloud account referenced in Attachment A.  Images found on Evidence Item 2 showed metadata that they were backup files obtained from the Apple iCloud account mentioned in Attachment A.  Furthermore during the forensic examination of Evidence Item 4, which utilized a different Apple iCloud account, the same images of child pornography which had been found on Evidence Item 2 were also found on Evidence Item 4.  The presence of these same image and video files found on both Evidence Item 2 and 4 and both found in the possession of Jon Hall indicates that the content was retrieved by different devices accessing content through the Apple iCloud account listed in Attachment A, which can be accessed remotely through multiple devices.

152.    Based on the foregoing, there is probable cause to believe that the federal criminal statutes cited herein have been violated, and that the contraband, property, evidence, fruits and instrumentalities of these offenses, more fully described in Attachment B, are located at the locations described in Attachment A.  I respectfully request that this Court issue a search warrant for the locations described in Attachment A, authorizing the seizure and search of the items described in Attachment B.

153.    Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Apple.  Because the warrant will be served on Apple, who will then

compile the requested records at a time convenient to it, reasonable cause exists to permit the

execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Taylor Bagley
Task Force Officer
Homeland Security Investigations

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedure

Date: **Nov 14 2022**

City and state: _____ Bangor, ME _____

Judge's signature

John C. Nivison U.S. Magistrate Judge
Printed name and title